TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00252-CV






Kenneth Koenig, Appellant


v.


Deborah Lynn DeBerry, Appellee






FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT

NO. 14,377, HONORABLE BEN WOODWARD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Kenneth Koenig appeals from a district court order modifying his child-support
obligations under the divorce decree that had ended his marriage to appellee Deborah Lynn DeBerry. 
The order increased Koenig's child-support obligations from $500.00 per month to $842.59
per month. In two issues on appeal, Koenig, who is now incarcerated, asserts that the district court
abused its discretion in increasing his child-support obligation because there is insufficient evidence
to support the increase and that the court's determination of his net monthly resources erroneously
considered "community property retirement funds." We will affirm the order.


BACKGROUND

 In 2003, Koenig and Deborah Lynn DeBerry were divorced in Williamson County.
There were two children of the marriage, born in 1995 and 1996. The decree obligated Koenig to
pay DeBerry child support in the amount of $500.00 per month and to provide medical insurance
for the children.

 In February 2008, Koenig was arrested for the felony offense of driving while
intoxicated. That same month, DeBerry filed a petition in Williamson County to modify the parent-child relationship and increase the amount of Koenig's monthly child-support payment obligation.
With her petition, DeBerry moved to transfer the proceeding to Runnels County, where she had
moved with the children in the meantime. The Williamson County trial court granted the transfer
motion. On April 25, Koenig filed a counter-petition seeking a reduction in child support, citing
increased travel expenses he had been incurring "because of [DeBerry] moving the children
250 miles away from [Koenig's] residence." Koenig also requested that the district court restrict the
children's residence to a 250-mile radius from Koenig's residence.

 While the modification petition and counter-petition were pending, Koenig was
convicted of driving while intoxicated and sentenced to four years' imprisonment. The judgment
of conviction was rendered on August 12, 2008. On September 12 of that year, Koenig filed
a petition to suspend his child-support and medical insurance obligations. The petition alleged
that Koenig was unable to fulfill these obligations because he was now serving his four-year
prison sentence. 

 A hearing on the modification petitions was held on November 6, 2008. Koenig
appeared through counsel though not in person. At the beginning of the hearing, the district court
took judicial notice of Koenig's judgment of conviction. Koenig then introduced into evidence a
copy of a check, dated August 6, 2008, in the amount of $34,391.59, drawn from TransAmerica Life
Insurance Company and made payable to Koenig. It is undisputed that the check was a withdrawal
from Koenig's 401(k) retirement plan with his employer, Austin Telco Federal Credit Union. (1)
Koenig rested without presenting additional evidence. (2)

 DeBerry then presented evidence. She testified that she was seeking an increase
in child support because Koenig's salary had increased following their 2003 divorce. DeBerry
introduced into evidence a copy of the 2007 joint tax return of Koenig and his current wife. The
return reflected that the couple's adjusted gross income was $78,402.00. DeBerry testified that
Koenig and his current wife were both employed during 2007 and that they do not have any children
together. Also admitted into evidence was Koenig's 2007 W-2 and Earnings Summary, which
showed that Koenig's gross pay from his employer for that year was $56,501.71 and that
he had contributed $2,825.10 that year to his 401(k) plan. Additionally, DeBerry introduced
interrogatory responses from Koenig in which he represented that his monthly gross income from
his employer was $4,275.00 per month.

 DeBerry then testified about her financial circumstances. She explained that she
is employed by the City of Ballinger in its water billing department. According to DeBerry, her
gross monthly income is $1,600 per month, and approximately $400.00 per month is deducted
from that amount so that her two children can be included on her health insurance policy. DeBerry
testified that her "take-home pay" is $339.00 every two weeks or approximately $700.00 per month.

 Also admitted into evidence was a second set of interrogatories in which Koenig
was asked to list "any and all stock options or retirement, pension, profit-sharing, employee stock
ownership, Keogh, or individual retirement plans in which you claim an interest, and the
current balances of each plan or stock interest." The following answer was provided: "On or
about September 27, 2008, Respondent cashed in his IRA/retirement account with
Transamerica Retirement Services to pay bills and expenses before he was incarcerated in the
Texas Department of Corrections and to leave some extra money to care for his wife and children
during his incarceration."

 The district court also admitted into evidence affidavits reflecting DeBerry's
calculations of the amount of child support she believed Koenig owed based on her application of
the family code's tax tables and child-support guidelines (3) to his employment income and retirement
withdrawal. Koenig objected to DeBerry using the retirement withdrawal in her calculations on
the ground that the retirement funds, in his view, represented community property of him and
his current wife which, therefore, should not be included in the amount owed. The district court
overruled this objection. 

 On cross-examination, DeBerry testified that during August, September, and
October 2008, after Koenig had been convicted and began serving his prison term, she had continued
receiving child support checks in the amount of $500.00 per month. On redirect, DeBerry testified
that Koenig had told her that the October child support payment was coming out of an outstanding
payroll check that Koenig had been owed by his employer prior to his conviction. 

 After DeBerry's testimony, the parties provided closing arguments. The district court
then took the matter under advisement, and the hearing concluded. On November 18, 2008, the
district court sent the parties copies of the following findings:


The Motion to Increase Child Support was served on Father on February 28, 2008;
Father is capable of earning $4,275/month gross salary; for 2 children before the
court, the child support guidelines establish child support at $842.59/month; Father's
incarceration is not an excuse [not] to pay child support; Father withdrew $34,391.59
from a retirement account which is a source for paying child support while he is
incarcerated; and there is not sufficient evidence that Father does not have the
resources to pay child support.



Based on the above findings, the district court ordered that Koenig's child support obligation be
increased to the amount of $842.59 per month, retroactive to March 1, 2008. Apparently taking into
account the $500.00 per month payments Koenig had already made between March 1 and the
hearing, the district court ordered that Koenig owed DeBerry a total amount of $2,739.12 in
retroactive child support for the period between March 1 through October 1, 2008, which Koenig
was ordered to pay at the rate of $100.00 per month beginning December 1, 2008. The district court
further ordered Koenig to reimburse DeBerry for the children's health insurance in the amount of
$400.00 per month, again beginning on December 1, and to pay 50 percent of any uninsured medical,
dental, or eye-care expenses incurred by the children. Finally, the district court awarded DeBerry
$2,000 in attorney's fees.

 Subsequently, Koenig filed a motion to reconsider. Following a hearing, the
district court overruled the motion. This appeal followed.


STANDARD AND SCOPE OF REVIEW

 When reviewing a modification of a child-support order, we are mindful that the best
interest of the children should be the trial court's primary consideration. See Tex. Fam. Code Ann.
§ 156.402(b) (West 2008); Hollifield v. Hollifield, 925 S.W.2d 153, 155 (Tex. App.--Austin 1996,
no writ). Trial courts have wide discretion in determining the best interest of the children. Gillespie
v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Hollifield, 925 S.W.2d at 155. Therefore, a
trial court's order modifying child support will not be disturbed on appeal unless the complaining
party can show a clear abuse of discretion. See Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990); In re J.A.J., 283 S.W.3d 495, 497 (Tex. App.--Beaumont 2009, no pet.); Gonzalez
v. Tippit, 167 S.W.3d 536, 544 (Tex. App.--Austin 2005, no pet.). "The test for abuse of discretion
is whether the trial court acted without reference to any guiding rules or principles; in other words,
whether the act was arbitrary or unreasonable." Worford, 801 S.W.2d at 109. "The mere fact that
a trial judge may decide a matter within his discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has
occurred." Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985). Under the
abuse of discretion standard here, legal and factual sufficiency are not independent grounds of error,
but are relevant factors in assessing whether the trial court abused its discretion. Doyle v. Doyle,
955 S.W.2d 478, 479 (Tex. App.--Austin 1997, no pet.). In making that determination, we view
the evidence in the light most favorable to the trial court's decision and indulge every legal
presumption in favor of the decision. In re J.D.D., 242 S.W.3d 916, 920 (Tex. App.--Dallas 2008,
pet. denied); Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex. App.--San Antonio 1995, writ denied). 
As long as some evidence of a substantive and probative character exists to support the trial court's
order, we will not substitute our judgment for that of the trial court. See Echols v. Olivarez,
85 S.W.3d 475, 477 (Tex. App.--Austin 2002, no pet.).


ANALYSIS

 Koenig argues that the district court abused its discretion in increasing his
child support for two reasons. In his first issue, Koenig asserts that because he is incarcerated and
no longer employed, there was insufficient evidence to support the district court's finding that he
was capable of earning $4,275.00 per month and, therefore, insufficient evidence to support
the increase in his child-support obligation. In his second issue, Koenig re-urges the argument
that, because his retirement account was community property of him and his current wife, the
district court should not have considered funds withdrawn from that account in determining Koenig's
child-support obligations. (4)

 We begin with Koenig's second issue. Koenig relies on the family code's prohibition
against adding "any portion of the net resources of a spouse to the net resources of an obligor
or obligee in order to calculate the amount of child support to be ordered." Tex. Fam. Code Ann.
§ 154.069(a) (West 2008). (5) In Koenig's view, because the funds in his retirement account were
the community property of him and his current spouse, they were "net resources of [that] spouse"
under section 154.069(a) that could not be considered in calculating the amount of child support
he owes DeBerry. We disagree.

 "Section 154.069 is a legislative endeavor 'to design a neutral scheme that would
be unaffected by the remarriage of the child support obligor, either for the purpose of increasing or
decreasing child support.'" In re J.C.K., 143 S.W.3d 131, 136 (Tex. App.--Waco 2004, no pet.)
(quoting Starck v. Nelson, 878 S.W.2d 302, 306 (Tex. App.--Corpus Christi 1994, no writ)). In
other words, even though income generated by a spouse's separate property is community property,
no portion of that income should be included in calculating a child support obligor's net resources.
In re Knott, 118 S.W.3d 899, 904 (Tex. App.--Texarkana 2003, no pet.). However, that is not what
happened here. The retirement funds at issue in this case were not generated by the separate property
of Koenig's spouse. Rather, as DeBerry observes, the evidence shows that the retirement account
was part of Koenig's employment benefits, he contributed to the account directly from his
monthly paycheck, and the check withdrawing funds from the account was made payable solely to
Koenig. Therefore, even though the retirement funds were presumptively the community property
of Koenig and his current spouse, (6) the district court would not have abused its discretion in
finding that the retirement funds were subject to Koenig's sole management, control, and
disposition.  Accordingly, the district court could consider the funds in its determination of
Koenig's child support obligation. See Tex. Fam. Code Ann. § 3.202(c) (West 2006) ("The
community property subject to a spouse's sole or joint management, control, and disposition is
subject to the liabilities incurred by the spouse before or during marriage."); In re A.D., 73 S.W.3d
244, 248 (Tex. 2002) (characterizing child support as "a previously adjudicated liability" of obligor);
see also In re D.T., No. 12-05-00420-CV, 2007 Tex. App. LEXIS 9968, at *14-16
(Tex. App.--Tyler Dec. 21, 2007, no pet.) (explaining that child support lien attached to all of
obligor's community property, including his retirement plan, unless obligor or his spouse satisfied
burden to prove that community property was subject to spouse's sole management, control, and
disposition). We overrule Koenig's second issue.

 Our disposition of Koenig's second issue also bears upon his first, in which he
complains that the district court abused its discretion in setting his monthly child-support obligation
at $842.59 per month because there is insufficient evidence to support its finding that he is capable
of earning $4,275.00 per month. The district court heard evidence that during the year prior
to Koenig's conviction, Koenig's gross pay from his employer was $56,501.71, and his net
monthly income was $4,275.00. Based on that income, the amount of child support the district court
ordered, $842.59 per month, was consistent with the amount of support established by the statutory
guidelines. See Tex. Fam. Code Ann. §§ 154.061, .125. Thus, this amount is presumed to be
reasonable and in the best interest of the children. See id. § 154.122 (West 2008). Although Koenig
is no longer earning this income, the evidence was sufficient to enable the district court to find that
Koenig nonetheless had resources available to satisfy this obligation. In determining child-support
liability, the district court is to consider the "net resources" of the obligor, and that includes not only
wage and salary income, but "all other income actually being received, including . . . retirement
benefits." See Tex. Fam. Code Ann. § 154.062(a), (b)(5) (West 2008). The district court thus
properly considered evidence that Koenig had recently received $34,391.59 in income from
cashing out his retirement account in determining his monthly child-support obligation. We note
that dividing this total amount by the forty-eight months of his prison term yields approximately
$716.49 for each month from this source alone.

 The evidence was also sufficient to enable the district court to find that Koenig's
income he had earned from his past employment has not been depleted. See Reyes v. Reyes,
946 S.W.2d 627, 630 (Tex. App.--Waco 1997, no writ) (explaining that burden of proof is on
obligor to present evidence of inability to pay child support). To the contrary, DeBerry provided
evidence from which the district court could have reasonably inferred that the $500.00 child-support
payments Koenig continued to pay after his incarceration came from his past income. DeBerry
testified that Koenig had told her that the October child-support payment was coming out of
an outstanding payroll check that he was still owed from his employer. Moreover, even assuming
that Koenig cannot currently afford to make child-support payments, the district court's assessment
makes it possible for DeBerry to collect child-support arrearages if Koenig's financial condition
improves in the future. See In re M.M., 980 S.W.2d 699, 701 (Tex. App.--San Antonio 1998,
no pet.). 

 The fact that Koenig is currently incarcerated is not dispositive. This Court
and others have affirmed trial court orders requiring incarcerated obligors to pay child support. See,
e.g., Hollifield, 925 S.W.2d at 156-57; M.M., 980 S.W.2d at 701; Reyes, 946 S.W.2d at 630;
see also Slaughter v. Slaughter, No. 13-99-00497-CV, 2001 Tex. App. LEXIS 2783, at *6-9
(Tex. App.--Corpus Christi Apr. 26, 2001, pet. denied); In re Vespestad, No. 07-99-00281-CV,
2000 Tex. App. LEXIS 2329, at *3-6 (Tex. App.--Amarillo Mar. 31, 2000, no pet.). This is because
there is no legal presumption that an inmate has no assets. In re A.P., 46 S.W.3d 347, 350
(Tex. App.--Corpus Christi 2001, no pet.). Many people enter prison with assets from past
employment, while other inmates earn income during their incarceration. See M.M., 980 S.W.2d
at 701. "In the absence of proof from an incarcerated person that he or she does not have such
resources, it would not be in the best interest of his children to excuse that person from support
obligations." Id. Koenig provided no such proof, and the evidence was sufficient to support the
district court's contrary findings.

 On this record, viewing the evidence in the light most favorable to the district court's
decision, we cannot conclude that the district court abused its discretion in modifying Koenig's
child support obligation. We overrule Koenig's first and second issues.











CONCLUSION

 We affirm the order of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: March 17, 2010

1. The check stub indicates that the gross withdrawal amount was $42,653.61. $75.00 in fees
and $8,187.02 in federal taxes were deducted from that amount, yielding a net payment of
$34,391.59.
2. Koenig did attempt to introduce a "breakdown sheet" that purported to demonstrate that 
Koenig's current wife (he had remarried since his divorce from DeBerry) had spent most of the
retirement money. However, DeBerry objected to this evidence on the ground that it had not been
shown to her prior to the hearing. The district court excluded this evidence, and Koenig does not
complain of this ruling on appeal. 
3. See Tex. Fam. Code Ann. §§ 154.061 (providing tax charts for computing net
monthly income), .125 (providing statutory guidelines for computing child support based on
obligor's monthly net resources and number of children being supported) (West 2008).
4. Koenig does not challenge on appeal the portions of the district court's order requiring
Koenig to reimburse DeBerry for health insurance, requiring him to contribute to the children's
uninsured medical expenses, or awarding attorney's fees to DeBerry. 
5. The statute also provides that the court "may not subtract the needs of a spouse, or of
a dependent of a spouse, from the net resources of the obligor or obligee." Tex. Fam. Code Ann.
§ 154.069(b) (West 2008).
6. See Tex. Fam. Code Ann. §§ 3.002 ("Community property consists of the property, other
than separate property, acquired by either spouse during marriage."), .003 ("Property possessed
by either spouse during or on dissolution of marriage is presumed to be community property.")
(West 2006).